JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Michael Gaughan appeals his conviction for aggravated murder and aggravated robbery and assigns the following errors for our review:
 "I. The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence to prove the elements of aggravated murder and aggravated robbery."
 "II. Appellant's conviction for aggravated murder and aggravated robbery were against the manifest weight of the evidence."
 "III. The trial court erred in limiting impeachment evidence on cross-examination of John Schwartz."
 "IV. The trial court erred in overruling appellant's motion to suppress his statements to the Cleveland Police."
 "VI. The trial court erred in permitting Marcel Houston to testify for the State, where the witness had not been disclosed in the State's discovery response."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On April 11, 2006, the Cuyahoga County Grand Jury indicted Gaughan on two counts each of aggravated murder and aggravated robbery and one count of having a weapon while under disability. All three counts had one and three year firearm specifications attached. Gaughan pleaded not guilty at his arraignment, and a series of pre-trials followed. On September 4, 2007, a jury trial commenced.
 Jury Trial {¶ 4} At trial, the evidence presented, through the testimony of thirteen witnesses, established that on February 23, 2006, in the City of Cleveland, Ohio *Page 4 
Glen Pearson was fatally shot in front of his house. The coroner determined that Pearson died as a result of a gunshot wound to his back. The ballistic experts recovered spent shells in Pearson's front yard and on the walls of his house.
 {¶ 5} At trial, Delphine Evans, who referred to Pearson as her "weed man," testified that on February 23, 2006, she was having a party to celebrate her 21st birthday. Evans and her friends were drinking, smoking marijuana and generally having a good time. Evans stated that the victim, Pearson, provided all the marijuana for the party as a birthday present to her.
 {¶ 6} At approximately 6:30 p.m., Gaughan, whom Evans has known for a long time, arrived at the party. Shortly after Gaughan arrived, he indicated to her and to several of her guests that he wanted to rob Pearson. Gaughan asked Evans to telephone Pearson and pretend that she needed more marijuana, but she refused. Although Evans thought Gaughan was joking, she told him not to do anything stupid.
 {¶ 7} Gaughan asked Johnny Schwartz to telephone Pearson. Schwartz, who Evans considered mentally challenged, eventually made the call to Pearson. Gaughan and Schwartz proceeded down the street in the direction of Pearson's house.
 {¶ 8} Evans and her friend, Amanda Kline, went outside and watched as Gaughan followed behind Schwartz and proceeded down the street to Pearson's house. Evans saw Pearson come out to his front yard to meet Schwartz. Evans *Page 5 
observed Gaughan come from behind the bushes with a gun in each hand, and began to shoot at Pearson. Gaughan fired several times, hitting Pearson, who then staggered back into his house.
 {¶ 9} After Evans discovered that Pearson was fatally shot, she decided to send an anonymous note to the police, and identified Gaughan as the shooter. Evans used a fictitious name because of a prior felony conviction and because of an outstanding warrant for violating probation. Evans also testified that she did not give the correct name because it was against the culture of the neighborhood to inform on perpetrators of crimes.
 {¶ 10} Kline was at Evans's birthday celebration and heard Gaughan discuss that he would rob Pearson, but did not think that he would follow through with the plan. After Gaughan and Schwartz proceeded to Pearson's house, Kline and Evans followed behind them, but Kline stopped at a corner store to buy a cigar. While in the store, Kline heard gunshots, and when she looked outside, she observed three people run, including Schwartz.
 {¶ 11} Darius Lynch, who admitted that he was a convicted drug dealer, was Pearson's close friend. On February 23, 2006, while Lynch and Pearson were assembling a television set, Pearson received a call from Schwartz. Pearson went outside to meet Schwartz. Shortly thereafter, gunfire erupted. Moments later, Pearson staggered back into the house and asked Lynch to dial 911. *Page 6 
 {¶ 12} Schwartz, who at the time of the trial, was hospitalized in a psychiatric hospital, and had been found incompetent by the court, testified that on February 23, 2006, he had been drinking heavily, abusing drugs, including marijuana and ecstasy. Schwartz was present when Gaughan discussed robbing Pearson. Gaughan asked him to call Pearson, ordered marijuana, and lured him outside his house.
 {¶ 13} Schwartz made the call and proceeded to meet Pearson. As soon as Pearson came outside, Gaughan appeared and started to shoot at Pearson. Pearson turned and ran back into the house as Gaughan continued to shoot at him. Gaughan then ran around the corner and Schwartz went back to the party.
 {¶ 14} Robyn Pettis was Gaughan's girlfriend during the time of the shooting. On February 23, 2006, Gaughan was supposed to visit Pettis overnight. Gaughan called several times to explain that he would be delayed. At approximately 11:00 p.m., Pettis spoke with Gaughan and told him to come the following day.
 {¶ 15} Pettis subsequently found out about the shooting and discovered that Gaughan was a suspect. Gaughan called her several times over a period of months and asked her to testify that he was with her on the night of the shooting.
 {¶ 16} Denise Gurley testified that Gaughan is the father of her son. Gurley's son had an asthma attack on February 23, 2006. She took him to Lutheran Hospital. Gaughan was at the hospital with her from 8:15 p.m. through 10:20 p.m.
 {¶ 17} Marcel Houston, who at the time of trial was in federal custody awaiting sentencing, heard that Pearson had been shot. On the night of the shooting, *Page 7 
Houston saw and heard Gaughan admit that he had shot Pearson. Houston testified that Gaughan claimed to have shot Pearson because Pearson had become cocky. Houston also testified that Gaughan claimed that Pearson was commanding twenty dollars for a bag of marijuana.
 {¶ 18} Detective John Morgan of the Cleveland Police Department responded to the scene of the fatal shooting and was the lead investigator on the case. During the course of the investigation, Detective Morgan met with Gaughan several times, and on each occasion administered the Miranda warnings. On March 9, 2006, Gaughan stated that he knew Pearson as the "weed man," but he had never purchased any marijuana from Pearson. When asked about his whereabouts at the time of the shooting, Gaughan stated that he was at the hospital with his son and the child's mother. Detective Morgan testified that subsequent to their meeting, the investigation established that Gaughan's son was not registered at the hospital during the time frame Gaughan had claimed.
 {¶ 19} In a second interview, Gaughan stated to Detective Morgan that someone by the name of Sahad had killed Pearson. When Detective Morgan confronted Gaughan about the time discrepancy of his son's hospital visit, he claimed that he was with his girlfriend. Gaughan claimed that he did not want to say that before because he did not want his child's mother to find out about his girlfriend.
 {¶ 20} At the close of trial, the jury found Gaughan guilty of one count of aggravated murder and both counts of aggravated robbery. Separately, the trial *Page 8 
court found Gaughan guilty of having a weapon while under disability. The trial court sentenced Gaughan to concurrent prison terms of twenty-five years to life for aggravated murder, ten years for each count of aggravated robbery, and five years for the weapons charge. The trial court also sentenced Gaughan to concurrent prison terms of three years for each of the firearm specifications. The trial court ordered the sentences for the firearm specification to be served prior to and consecutively to the other charges.
 Motion for Acquittal {¶ 21} In the first assigned error, Gaughan argues that the trial court should have granted his motion for acquittal because the evidence was insufficient to support his convictions. We disagree.
 {¶ 22} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman:[1]
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[2] *Page 9 
 {¶ 23} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks, [3] in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 24} After reviewing the evidence in a light most favorable to the State, we find that the evidence could convince a rational trier of fact that the State had proven beyond a reasonable doubt each element of the charge of aggravated murder and aggravated robbery.
 {¶ 25} In the instant case, three witnesses, including a co-defendant, testified that Gaughan discussed robbing Pearson. Evans stated that Gaughan asked her to *Page 10 
telephone Pearson and order the marijuana, which would lure Pearson outside his home. Evans, who refused to cooperate with the plan, stated that Gaughan's co-defendant, Schwartz, eventually telephoned Pearson, who came outside and met his demise.
 {¶ 26} In addition, Evans testified that she observed Gaughan shoot at Pearson multiple times and that as Pearson attempted to run back into his house, Gaughan continued to shoot. Further, Schwartz, who Gaughan used to lure Pearson outside his house, testified that Gaughan shot at Pearson multiple times.
 {¶ 27} Finally, the physical evidence collected at the scene, the coroner's determination that Pearson died as a result of a gunshot wound to his back, corroborates the eyewitnesses' testimonies that multiple shots were fired and that Pearson was attempting to run back inside the house.
 {¶ 28} Consequently, viewing the evidence in the light most favorable to the State, we conclude that any rational trier of fact could have found that the State proved all of the essential elements of the instant charges beyond a reasonable doubt. Thus, the trial court properly denied Gaughan's motion for acquittal. Accordingly, we overrule the first assigned error.
 Manifest Weight of Evidence {¶ 29} In the second assigned error, Gaughan argues his conviction is against the manifest weight of the evidence. We disagree. *Page 11 
 {¶ 30} In State v. Wilson, [4] the Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."
 {¶ 31} As discussed in our resolution of the first assigned error, Gaughan's convictions were based on substantial and sufficient evidence. Several pivotal witnesses testified that Gaughan had planned to rob Pearson. The witnesses testified that Gaughan discussed that he would rob Pearson by luring him outside his house. Two of the witnesses observed Gaughan shooting at Pearson multiple times. *Page 12 
 {¶ 32} Nonetheless, Gaughan maintains that the witnesses, many of who had felony convictions, were not credible and their testimonies were inconsistent. However, a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.[5] The determination of weight and credibility of the evidence is for the trier of fact.[6] The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimonies are credible.[7]
 {¶ 33} Further, the trier of fact is free to believe or disbelieve all or any of the testimony.[8] Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility.[9]
Therefore, Gaughan's convictions are not against the manifest weight of the evidence. Accordingly, we overrule the second assigned error.
 Limiting Impeachment Evidence *Page 13 {¶ 34} In the third assigned error, Gaughan argues the trial court erred in limiting impeachment evidence during the cross-examination of Schwartz. We disagree.
 {¶ 35} A defendant's right to cross-examine the state's witnesses is guaranteed by the confrontation clause of the Sixth Amendment to the United States Constitution.[10] As is true in other evidentiary matters, the extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.[11]
 {¶ 36} The order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion.[12]
Moreover, the trial court may impose reasonable restrictions on the scope of cross-examination based on concerns about harassment, prejudice, confusion of the issues, or relevance of the inquiry.[13]
 {¶ 37} In the instant case, despite Gaughan's complaints that the trial court improperly limited his cross-examination into Schwartz's psychiatric history, *Page 14 
Gaughan has failed to put forth any evidence that Schwartz could not recall his involvement and observation of the events. Further, the jury was aware of Schwartz's incompetency. Finally, Gaughan was not prejudiced by the limitations imposed, because two other witnesses testified to the planned robbery, which resulted in Pearson's death. Moreover, as previously discussed, the physical evidence and coroner's determination corroborated the testimony of the other witnesses.
 {¶ 38} We conclude on the record before that the trial court properly limited the cross-examination of Schwartz. Accordingly, we overrule the third assigned error.
 Motion to Suppress {¶ 39} In the fourth assigned error, Gaughan argues that the trial court erred in denying his motion to suppress his statements to the police. We disagree.
 {¶ 40} An appeal of a trial court's ruling on a motion to suppress evidence involves mixed questions of law and fact.[14] Initially, we note that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.[15] *Page 15 
 {¶ 41} Thus, the credibility of witnesses during a suppression hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility.[16]
Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.[17]
 {¶ 42} In State v. Treesh, [18] the Supreme Court of Ohio stated: "It is well established that a defendant who is subjected to custodial interrogation must be advised of his or her Miranda rights and make a knowing and intelligent waiver of those rights before statements obtained during the interrogation will be admissible***."
 {¶ 43} In the instant case, Detective Morgan testified that he administered the Miranda warnings each time he met with Gaughan. Detective Morgan stated that on each occasion, Gaughan indicated that he understood. Notably, the record indicates that Gaughan never confessed to the crime, but instead provided several alibis, which eventually proved to be unfounded.
 {¶ 44} We conclude that the record establishes that Gaughan understood his rights and voluntarily made statements to Detective Morgan. Consequently, the trial *Page 16 
court did not err in admitting the statements into evidence. Accordingly, we overrule the fourth assigned error.
 Exclusion of Witness {¶ 45} In the fifth assigned error, Gaughan argues the trial court should not have allowed Houston to testify because he was not disclosed on the witness list the State provided. We disagree.
 {¶ 46} A trial court's ruling on the admission of evidence will not be reversed absent an abuse of discretion.[19]
 {¶ 47} The record reveals that the State did not become aware of Houston until after trial began. The record indicates that the State learned that Houston was a family member of Pearson. The record also indicates that the State disclosed the information about Houston immediately after it was discovered. Further, the trial court gave Gaughan's defense counsel time to investigate and to prepare its cross-examination.
 {¶ 48} Here, based on the foregoing, the trial court did not err in allowing Houston to testify. Accordingly, we overrule the fifth assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed. *Page 17 
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and JAMES J. SWEENEY, J., CONCUR
[1] (1978), 55 Ohio St.2d 261, syllabus.
[2] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[3] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[4] 113 Ohio St. 3d 382, 2007-Ohio-2202.
[5] State v. Raver, 10th Dist. No. 02AP-604, 2003-Ohio-958.
[6] State v. Chandler, 10th Dist. No. 05AP-415,2006-Ohio-2070, citing State v. DeHass (1967), 10 Ohio St.2d 230.
[7] State v. Williams, 10th Dist. No. 02AP-35, 2002-Ohio-4503.
[8] State v. Sheppard (Oct. 12, 2001), Hamilton 1st
Dist. No. C-000553.
[9] State v. Covington, 10th Dist. No. 02AP-245, 2002-Ohio-7037, at ¶ 22; State v. Hairston, 10th Dist. No. 01AP-1393, 2002-Ohio-4491, at ¶ 17.
[10] Douglas v. Alabama (1965), 380 U.S. 415, 418, 13 L.Ed.2d 934,85 S.Ct. 1074.
[11] State v. Green (1993), 66 Ohio St.3d 141, 147, 1993-Ohio-26, quoting Alford v. United States (1931), 282 U.S. 687, 691,75 L. Ed. 624, 51 S. Ct. 218; O'Brien v. Angley (1980), 63 Ohio St.2d 159,163.
[12] State v. Totarella, 11th Dist. No. 2002-L-147,2004-Ohio-1175.
[13] State v. Brown, 11th Dist. No. 2001-T-0146, 2003-Ohio-2364, at ¶ 14, quoting Delaware v. Van Arsdall (1986), 475 U.S. 673, 679,89 L.Ed.2d 674, 106 S.Ct. 1431.
[14] State v. Boulis, Cuyahoga App. No. 86885, 2006-Ohio-3693.
[15] See State v. Robinson (1994), 98 Ohio App.3d 560; State v.Rossiter (1993), 88 Ohio App.3d 162; State v. Lewis (1992),78 Ohio App.3d 518; State v. Warren (Aug. 12, 1991), 4th Dist. No. 90CA7.
[16] See State v. Mills (1992), 62 Ohio St.3d 357; State v.Fanning (1982), 1 Ohio St.3d 19.
[17] See State v. Harris (1994), 98 Ohio App.3d 543.
[18] 90 Ohio St.3d 460, 2001-Ohio-4.
[19] State v. Coldiron, 3rd Dist. No. 2-2000-31, 2001-Ohio-2250; State v. Sage (1987), 31 Ohio St.3d 173. *Page 1