[Cite as *State v. Mossburg*, 2013-Ohio-1664.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 98769

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MATTHEW J. MOSSBURG

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-546276

**BEFORE:** Keough, J., Boyle, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 25, 2013

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, Ohio 44067

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Brian M. McDonough
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Matthew Mossburg ("Mossburg"), appeals his domestic violence conviction. Finding no merit to the appeal, we affirm.

{¶2} In January 2011, Mossburg was charged with rape, attempted felonious assault, domestic violence, and two counts of kidnapping. Both the attempted felonious assault and the domestic violence charges carried a pregnant victim specification. Mossburg waived his right to a jury trial, and the following evidence was heard during a bench trial.

{¶3} Mossburg and the victim, Melanie Carson, lived together at a residence on West 45th Street in Cleveland. They had been dating for about a year, and Carson was approximately three months pregnant. According to Carson, she was pregnant with Mossburg's child. The couple lived with John Dunikowski, who was a life-long friend, former boyfriend of Carson, and the father of one of Carson's children.

{¶4} On January 10, 2011, Carson and Mossburg went to MetroHealth Medical Center for an ultrasound appointment. Following the appointment, an argument ensued over Mossburg's infidelity. It was at this point, the version of events differ.

{¶5} According to Carson, after she and Mossburg arrived home from the ultrasound, he wanted to have sex with her. Carson told him "no," but to go "get it off his new girlfriend." Mossburg then forced her to have sex with him. Carson testified

that although she kept saying "no," she eventually "gave up." Afterwards, they both got dressed, started watching a movie, and her neighbor Mark came over. She stated that she did not tell Mark what happened because she did not want to start a fight. However, she testified that she called Dunikowski, who was in the downstairs apartment, and told him to come home right away because she and Mossburg got into an argument. She stated she did not tell Dunikowski about the rape.

{¶6} When Dunikowski arrived home, Carson stated that Mossburg put his hands on her by punching her in the leg and arms and slamming her against the wall with his hands around her throat while choking her. Carson testified that Dunikowski had to pull Mossburg off her and "peel his hands off her throat." Mossburg then called her names and threatened to "cut the baby out of her stomach."

{¶7} Dunikowski then told Mossburg to leave the apartment. After he left, Carson testified that she and Dunikowski walked to the hospital that night and then went to the police station the next day. When questioned about whether she was certain of the times and dates of going to the hospital and police station, Carson stated she could not remember, but "everything else was imprinted in her head." She stated she had bruising on her leg, and her arms bruised after the pictures were taken and after going to the hospital.

{¶8} Mossburg testified that he suffers from mental health conditions and is currently on medication. He stated that on January 10 after he and Carson left the hospital, an argument ensued over Mossburg cheating on Carson with a girl named

"Melissa." Mossburg stated that the argument started because there were "hickeys" on his neck and Melissa had sent him a text message that Carson discovered. After the argument, Mossburg testified that he apologized to Carson for being unfaithful and Carson made dinner for them and the neighbor, Mark. He testified that afterwards they had "make-up sex," which Mossburg stated was consensual. He stated that after having sex, they were watching a movie, but got into another argument when Melissa called his cell phone. According to Mossburg, Carson pushed him. He testified that he was told to leave when Dunikowski came home. Mossburg admitted he was angry, but denied putting his hands on Carson, raping her, or holding a knife to her while threatening her.

{¶9} While his video tape interrogation with police revealed that the fight over infidelity involved a girl named "Christine," the pertinent facts involving the incident on January 10 were substantially similar to his testimony. At trial, Mossburg admitted that while he is confused about the girls, he was not confused about Carson and whether he hit her or forced her to have sex.

{¶10} Dunikowski testified that he has known Carson since they were both kids and he and Carson began living together and dating in 2005. Even though their relationship fell apart in 2006, they still lived together. He testified that Carson and Mossburg lived with him, but he paid all the bills, including the rent. He stated Mossburg bought food for the household, and Carson did not contribute financially to the household.

**{¶11}** Dunikowski testified that prior to January 10, 2011, there had been no major incidents between Mossburg and Carson. However, on January 10, he received a voice mail from Carson that stated she had been raped. Even so, he stated he did not call the police. He testified that he arrived home to Mossburg and Carson screaming at each other — arguing about "the rape or something else." He stated he saw Mossburg pushing and grabbing Carson and pinning her against the wall by her throat with his hand. He stated that Mossburg did not punch Carson. He further stated that Mossburg had a knife threatening to "cut the baby out of [Carson's] stomach."

**{¶12}** Dunikowski testified that he and Carson went to the Second District police station the following day or a couple of days later to file a report. He stated that he played the voice mail that he received from Carson for the police, which they recorded. He admitted he did not tell the police about the knife or the rape during his statement with police.

**{¶13}** During his testimony, Dunikowski identified a picture he took of Carson's leg, which depicted a slight bruise on her shin. He testified that he took the picture after they left the police station. He stated that he did not know how the bruise occurred. He further stated that he did not see any bruising on Carson's neck or arms. According to Dunikowski, Carson was pregnant during this incident with his child, not Mossburg's.

**{¶14}** Detective Robert Ford testified that Carson and Dunikowski initially went to the Second District police station on January 12 to report the incident. However, he was assigned to the case on January 14 and on this day he spoke with both Carson and

Dunikowski and received statements from them. He stated that although Carson and Dunikowski had some "restricted mental functioning," they were able to verbalize and communicate without difficulty. He stated that he took their statements, but did not recall whether he listened to any voice mails. He indicated if he had, he would have recorded them. Additionally, he testified that he did not see any signs of trauma or photograph any trauma to Carson. If he had seen any injury, he would have photographed it. However, he did state that the initial report noted "bruising" and that he did not conduct a head to toe examination for injuries. Further, he stated that when he went to the apartment, Carson was unable to identify any particular knife that was used in the altercation.

{¶15} Ford also conducted an interview with Mossburg on January 18, which was videotaped and admitted into evidence. According to Ford, Mossburg was polite, cooperative, and concerned about the situation when he spoke with him.

{¶16} Jennifer Beigie, MetroHealth emergency room nurse and SANE nurse testified she treated Carson for the alleged sexual assault. According to Beigie, Carson called the nurse line on January 12 at 12:44 p.m. and stated that her boyfriend tried to choke her, that her throat still hurt, she was having difficulty breathing, and she was three-months pregnant. According to Beigie, Carson was advised to come into the hospital for an evaluation and treatment. Beigie testified that she saw Carson on January 12 at 10:50 p.m. As part of her evaluation, a rape kit and a "head to toe" examination was performed. According to Beigie, she noted some redness to Carson's arms but no

other injuries or trauma to any other area of the body was noted. Beigie admitted she did not see any bruising on Carson's leg, but stated that bruising could become visible later. She further admitted that she could not tell when the redness on Carson's arms occurred or the cause, but stated that the redness was consistent with what Carson told her.

{¶17} The trial court found Mossburg not guilty of rape, kidnapping, and attempted felonious assault, but guilty of domestic violence and the attendant pregnant victim specification. Mossburg was sentenced to 12 months in jail, with credit for time served.

{¶18} Mossburg now appeals, raising as his sole assignment of error that his conviction for domestic violence is against the manifest weight of the evidence. He contends that the evidence presented by the state to support domestic violence lacked credibility.

{¶19} When a defendant asserts that a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A manifest weight challenge questions whether the prosecution met its burden of persuasion. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982).

**{¶20}** In this case, Mossburg was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that no person shall knowingly cause or attempt to cause physical harm to a family or household member. "Physical harm" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). The trial court in finding Mossburg guilty of domestic violence stated that "there is evidence in the record to support minor injuries."

**{¶21}** On appeal Mossburg challenges the weight of the evidence by asserting that neither Carson nor Dunikowski were credible and their testimonies were inconsistent. Additionally, it is asserted that his conviction is against the manifest weight of the evidence because Carson did not report the incident to the police or go to the hospital until two days after the alleged attack. Finally, Mossburg contends that although the nurse examiner saw redness on Carson's arms, the nurse did not know the cause of the redness and did not notice any bruising to Carson.

**{¶22}** While all of these assertions are true, the trial judge heard all the testimony and had the opportunity to weigh the credibility of the witnesses. Under well-settled precedent, we are constrained to adhere to the principle that the credibility of witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *See State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Although we consider the credibility of witnesses in a manifest weight challenge, we are mindful that the determination regarding witness credibility rests primarily with the trier of fact because the trier of fact is in the best position to view the witnesses and observe their

demeanor, gestures, and voice inflections — observations that are critical to determining a witness's credibility. *State v. Clark*, 8th Dist. No. 94050, 2010-Ohio-4354, ¶ 17, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 1996-Ohio-222, 661 N.E.2d 1068, and *State v. Antill*, 176 Ohio St. 61, 66, 197 N.E.2d 548 (1964). The trier of fact is free to accept or reject any or all the testimony of any witness. *State v. Smith*, 8th Dist. No. 93593, 2010-Ohio-4006, ¶ 16. As this court has previously recognized, a defendant is not entitled to a reversal on manifest-weight grounds merely because inconsistent evidence was presented at trial. *State v. Gaughan*, 8th Dist. No. 90523, 2009-Ohio-955, ¶ 32, citing *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958 at ¶ 21.

{¶23} In this case, there is no dispute that an altercation occurred between Mossburg and Carson on January 10, 2011. Mossburg testified that Carson came at him and that he did not put his hands on her; whereas, Carson and Dunikowski both testified that Mossburg threatened Carson with a knife, pushed her against the wall, and choked her. Carson also testified that Mossburug punched her in the leg.

{¶24} While the testimonies of both Carson and Dunikowski contained some inconsistencies, the record provides that consistent throughout the testimony of Carson was that Mossburg punched her in the leg. The photograph of Carson depicted a slight bruise to her shin. Dunikowski testified that he took the picture the same day that they went to the police. However, it is unclear from the testimony whether the photograph was taken on January 12 when they went to the Second District, or on January 14 when they met with Detective Ford. Although the MetroHealth nurse examiner did not note

any bruising on Carson, she testified that bruising could develop later. Moreover, Detective Ford stated that the initial RMS report noted "bruising."

{¶25} Finally, the nurse examiner testified that she observed redness on the upper arms of Carson. Although the nurse admitted that she did not know the cause of the redness, the location of the redness is consistent with Carson's testimony that Mossburg grabbed her and pushed her against the wall.

{¶26} Based on the record before us, we cannot say that this is the exceptional case where the court clearly lost its way in finding Mossburg guilty of domestic violence. The trial court's verdict demonstrates that it considered all the physical evidence, weighed the testimony of all the witnesses, and discounted and accepted testimony where the court determined it was appropriate. Accordingly, Mossburg's assignment of error is overruled.

{¶27} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR