[Cite as *State v. Jackson*, 2014-Ohio-3583.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100125**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CLIFFORD D. JACKSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-11-551409-A

**BEFORE:** Keough, P.J., E.T. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:**    August 21, 2014


**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, Ohio 44067


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Brian McDonough
       Stephanie N. Hall
Assistant Prosecuting Attorneys
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

**{¶1}** Defendant-appellant, Clifford Jackson, appeals his convictions and sentence. For the reasons that follow, we affirm.

**{¶2}** In 2012, Jackson was charged in a 21-count indictment for crimes associated with a 2011 home invasion that resulted in the shooting death of David Thompson ("David"). Those charges included aggravated murder, in violation of R.C. 2903.01(A) and (B) (Counts 1 and 2), aggravated burglary, in violation of R.C. 2911.11(A)(1) and (2) (Counts 3 and 4), kidnapping, in violation of R.C. 2905.01(A)(3) (Counts 5 through 12), attempted aggravated murder, in violation of R.C. 2923.02 and 2903.01(A) and (C) (Counts 13 through 19); and having weapons while under disability, in violation of R.C. 2923.13(A)(2) and (3) (Counts 20 and 21). Accompanying a majority of these charges were various specifications, including notice-of-prior conviction, repeat violent offender, and one- and three-year firearm specifications

**{¶3}** The case proceeded to trial where Jackson waived his right to a jury on the notice-of-prior conviction and repeat violent offender specifications, and Counts 20 and 21 — having weapons while under disability. The remaining counts were tried to the jury where the following evidence was considered.

{¶4} In the early morning hours of June 10, 2011, Donna D. Luster ("Donna D.") was at the home of her parents with her son and daughter. She was talking on the phone and sitting in the front room with her son and her sisters, Bernadette Luster ("Bernadette") and Gloria Luster ("Gloria"), when suddenly Jackson, Donna D.'s ex-boyfriend, barged into the home wielding a gun. He immediately questioned who she was on the phone with and stated that "everybody in this bitch about to die." Jackson smacked her in the face with the gun about three times while saying "Bitch I'm going to kill you. You're going to die." She stated that she saw her mother's boyfriend, David, exit the bedroom and that Jackson immediately shot David in the face. When she questioned Jackson why he was doing this, he hit her with the gun again.

{¶5} Donna D. testified that when Gloria tried to help her, Jackson hit Gloria in the head with the gun. After Donna D. and Gloria retreated to the bedroom, Jackson kicked in the door even though Gloria was trying to hold the door shut. Jackson pushed Donna D. onto the bed and repeatedly stabbed her in the head with a knife. After Gloria pushed Jackson off of her, the knife fell, and Donna D. ran to the kitchen. Jackson ran after her, and when he saw Bernadette, Jackson pointed the gun at Bernadette, spun the barrel of the gun, and pulled the trigger; the gun did not fire.

{¶6} Donna D. then ran to her mother's room and hid in the closet with her mother. Jackson entered the bedroom, stood on the bed, and pointed the gun at them

while saying, "you bitches about to die." Donna D., fearing for her mother's safety, charged at Jackson, and they began fighting. Donna D. chased after Jackson as he tried to run after her mother, but Jackson struck Donna D. in the head with the gun again, causing her to fall. After she got up off the floor, Donna D. climbed out of her mother's window and hid in her neighbor's garage. While hiding, she saw Jackson by the side of the house lifting his bicycle over the fence. Jackson then climbed over the fence and left the area. Two days later, Jackson was arrested without incident after he was seen riding his bicycle.

{¶7} A 911 call placed by Gloria was played for the jury where Gloria can be heard telling the dispatcher that "he's trying to shoot my sister." Gloria testified that when Jackson was trying to shoot her sister, she "rushed" at him, and he struck her with the butt of the gun on the left side of her face, which caused her to fall to the floor. After getting up, she and Donna D. ran to a bedroom, where Jackson stabbed Donna D. in the head with a knife. When Gloria rushed at Jackson again and the knife fell, Jackson chased her into another bedroom. Although Gloria tried to hold the door shut, Jackson wedged his arm in the doorway, while pointing and clicking the gun, but it did not fire. Once Jackson left, she ran to the downstairs neighbor.

{¶8} Gloria told the jury that Jackson was trying to shoot all of them, but the gun did not discharge. According to Gloria, Jackson was saying "Bitch ya'll going to die. All ya'll bitches going to die."

{¶9} Bernadette testified that when Jackson burst through the door, she saw Jackson with a gun in his hand, and she immediately ran into her parents' bedroom to tell them that Jackson was in the house. According to Bernadette, her parents left the room, with her father, David exiting first. When David asked "What's going on?"— Jackson responded, "This is what's going on," and shot David in the face.

{¶10} After David was shot, Bernadette ran to her bedroom and put the children, including her niece and Donna D.'s son and daughter, into the bedroom closet and pushed the bed up against the closet door. Bernadette testified that as she ran to the kitchen, Jackson pointed the gun at her and pulled the trigger, but it did not fire. She stated that she hid in a closet until she did not hear any further commotion, then she climbed out of the second-floor window. She eventually went back into the house and took the children downstairs to the neighbors. On cross-examination, Bernadette admitted that she did not tell the police that Jackson tried to shoot her.

{¶11} Donna D.'s mother, Donna Luster ("Donna") testified that when she and David came out of their bedroom, Jackson shot David in the face. She stated that Jackson then tried to shoot her, but the gun did not fire. She stated that Jackson was

"clicking" it — meaning that he was pulling the trigger. Donna testified that she ran into her bedroom. She was hiding in her closet with Donna D. when Jackson stood on the bed stating that he was "going to kill us." Donna testified that after she escaped out of the bedroom, she went to the downstairs neighbor, who called 911.

{¶12} The jury also heard testimony from all three of the children who were present in the house. They all stated they heard screaming while hiding in the closet.

{¶13} Additionally, the 911 calls that were placed by neighbors were played for the jury. Each neighbor testified regarding the circumstances surrounding the calls, that they heard females screaming, and heard either a loud thump or a gunshot.

{¶14} Terence Richardson, a former inmate at the county jail with Jackson, testified that while he was in jail, Jackson told him about the murder. According to Richardson, Jackson stated that someone tried to intervene and "found himself dead." The jury further heard that Richardson was facing nine charges for a total possible sentence of 60 years in prison, but after he contacted the police with the information he had in Jackson's case, he pled guilty to one charge and received a sentence of seven years.

{¶15} Medical examiner Dr. Thomas Gilson testified that he signed off on the autopsy of David. Based on the stippling around the gunshot entrance wound and fouling, Gilson opined that the barrel of the gun was approximately five to seven inches

away from David's face. Gilson testified that the cause of death was a gunshot wound through the cheek of David that passed through the brain and the manner of death was homicide.

{¶16} Following the state's presentation of its case, the court granted Jackson's Crim.R. 29 motion for judgment of acquittal on Counts 5 (kidnapping), 13 (attempted aggravated murder), and 15 (attempted aggravated murder).

{¶17} Jackson called two witnesses in his defense — Ronald Shobert, the warden of the Cuyahoga County Jail, and Michelle Johnson, a certified fingerprint examiner at the Cleveland Police Department. Shobert testified that Jackson had written a letter dated March 29, 2012, to inform the department that legal documents pertaining to his case had been taken from his jail cell, which included discovery documents. Shobert testified that those documents were never recovered.

{¶18} Johnson testified that Jackson's fingerprints were not found on the ginger ale soda bottle or on the knife recovered, even though various witnesses testified to seeing Jackson drink from the soda bottle. Johnson admitted that overlapping of fingerprints on both the bottle and the knife could have distorted any identifiable prints.

{¶19} The trial court denied Jackson's renewed Crim.R. 29 motion for judgment of acquittal, and the case was submitted to the jury on the remaining counts, including the state's request for the lesser included offense of murder to be considered.

**{¶20}** The jury found Jackson not guilty of Count 14 (attempted aggravated murder). The jury also found Jackson not guilty of Count 1, aggravated murder, but guilty of the lesser-included offense of murder. The jury also found Jackson guilty of all the remaining counts — Count 2 (aggravated murder), Counts 3 and 4 (aggravated burglary), Counts 6 through 12 (kidnapping), and Counts 16 through 19 (attempted aggravated murder). Additionally, the jury found Jackson guilty of all the attendant one- and three-year firearm specifications. The trial court found Jackson guilty of both Counts 20 and 21, having weapons while under disability, and also the notice-of-prior-conviction and repeat violent offender specifications.

**{¶21}** Prior to sentencing, the court considered the issue of merging allied offenses. While Jackson maintained that all the offenses merged for sentencing purposes, the state contended that Counts 1 and 2 merged, Counts 3 and 4 merged, Counts 6 and 16 merged, Counts 7 and 17 merged, Counts 9 and 18 merged, Counts 8 and 19 merged, and Counts 20 and 21 merged; all other counts were independent (Counts 10, 11, and 12). The trial court agreed with the state, and the state elected that Jackson be sentenced on Counts 2, 3, 16, 17, 18, 19, and 20, in addition to the other independent counts.

**{¶22}** Jackson was sentenced to two consecutive three-year firearm specifications pursuant to R.C. 2929.14(B)(1)(g) to be served consecutive and prior to all other

sentences. He was sentenced to life in prison without parole on Count 2, to run concurrently with the ten-year, concurrent sentences on each of Counts 3, 10, 11, 12, 16, 17, 18 and 19, and the three-year sentence on Count 20.

{¶23} Jackson appeals, raising six assignments of error.

## I. Sufficiency of the Evidence

{¶24} In his first assignment of error, Jackson contends that the evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that he was guilty of attempted aggravated murder, as charged in Counts 16, 17, 18, and 19 of the indictment. Specifically, he challenges the element that he acted with prior calculation and design.

{¶25} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶26}** Counts 16, 17, 18, and 19 charged Jackson with attempted aggravated murder, which is defined as purposely attempting, and with prior calculation and design, to cause the death of another. R.C. 2923.02 and 2903.01(A). The victims identified under each count were Donna D., Donna, Gloria, and Bernadette.

**{¶27}** Prior calculation and design "indicates studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim." *State v. Taylor*, 78 Ohio St.3d 15, 19, 676 N.E.2d 82 (1997). The Revised Code does not define "prior calculation and design," but the Ohio Supreme Court

> [h]as interpreted the phrase to require evidence of "more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill." *State v. Cotton*, 56 Ohio St.2d 8, 11, 381 N.E.2d 190. While "'[n]either the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves," momentary deliberation is insufficient. *State v. D'Ambrosio*, 67 Ohio St.3d 185, 196, 1993-Ohio-170, 616 N.E.2d 909, quoting the 1973 Legislative Service Commission Comment to R.C. 2903.01.

*State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 38.

**{¶28}** The existence of prior calculation and design is determined on a case-by-case analysis of the facts and evidence. *State v. Jones*, 91 Ohio St.3d 335, 345, 744 N.E.2d 1163 (2001). Although there is no bright-line test for determining prior calculation and design, the Ohio Supreme Court has found that several factors, including whether the accused and the victim knew each other, whether there was thought or

preparation in choosing the murder weapon or murder site, and whether the act was "drawn out" or "an almost instantaneous eruption of events" should be weighed with the totality of the circumstances surrounding the murder to determine whether there was prior calculation and design. *Taylor*; *State v. Jenkins*, 48 Ohio App.2d 99, 102, 355 N.E.2d 825 (8th Dist.1976).

{¶29} In this case, considering these factors and the totality of the circumstances, we find that construing the evidence in a light most favorable to the prosecution, there was sufficient evidence of prior calculation and design. This was not a sudden eruption of events, but rather a pre-calculated drawn out event where Jackson burst into the residence of his ex-girlfriend's parents and sisters with a gun and the intent to kill. He immediately started hitting Donna D. in the head with the butt of the gun, and Jackson repeatedly stated during the entire home invasion that everyone was going to die. Furthermore, he chased each victim throughout the house, pointed the gun at each victim, and pulled the trigger. At one point, he hit Gloria in the head with the gun when she tried to help her sister. He additionally grabbed a knife from the kitchen and repeatedly stabbed Donna D. in the head. He terrorized the occupants with threats of violence and acts of violence, including breaking through doors, stabbing Donna D., pistol-whipping both Donna D. and Gloria, attempting to shoot each occupant of the house, and ultimately murdering David.

**{¶30}** Accordingly, viewing the evidence in a light most favorable to the prosecution, we find that more than sufficient evidence was presented supporting Jackson's convictions for attempted aggravated murder. Jackson's first assignment of error is overruled.

## II. Manifest Weight of the Evidence

**{¶31}** In his second assignment of error, Jackson contends that his convictions for aggravated murder, murder, aggravated burglary, kidnapping, attempted aggravated murder, and having weapons while under disability were against the manifest weight of the evidence.

**{¶32}** "'A manifest weight challenge * * * questions whether the prosecution met its burden of persuasion.'" *State v. Ponce*, 8th Dist. Cuyahoga No. 91329, 2010-Ohio-1741, ¶ 17, quoting *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). The manifest-weight-of-the-evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 515 N.E.2d 1009 (9th Dist.1986), paragraph one of the syllabus. The discretionary power to grant a new trial should be exercised only in exceptional cases where the

evidence weighs heavily against the conviction. *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541.

**{¶33}** Jackson argues that his convictions are against the manifest weight of the evidence because there was no physical evidence linking him to the crime. Specifically, Jackson focuses on the fact that neither his DNA nor fingerprints were detected on the knife identified as the weapon used to stab Donna D. or on the soda bottle that Jackson allegedly drank from. However, although no physical evidence linking Jackson to these items was detected, there was physical evidence placing Jackson at the crime scene.

**{¶34}** Lisa Moore, from the Cuyahoga County Medical Examiner's office, DNA department, testified that she performed the DNA analysis on samples and items recovered from the crime scene. She testified that the blood found on the front door's interior door knob was consistent with Jackson's DNA profile. No testimony was given that Jackson had ever injured himself on a prior occasion that would explain the presence of his blood on the door knob.

**{¶35}** Morever, as Johnson testified, overlapping contact on the soda bottle and knife could have compromised any fingerprints. Considering that Donna D. had several stab wounds to her head and both she and Gloria identified the knife that Jackson used, Moore's explanation about overlapping fingerprints was possible.

**{¶36}** Jackson also contends his convictions were against the manifest weight of the evidence because inconsistent testimony was given by the witnesses regarding the clothing Jackson was wearing, the description of the gun, and whether David made a statement to Jackson prior to being murdered. He further argues that Richardson's testimony lacked credibility and reliability.

**{¶37}** Under well-settled precedent, we are constrained to adhere to the principle that the credibility of witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *See State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Although we consider the credibility of witnesses in a manifest weight challenge, we are mindful that the determination regarding witness credibility rests primarily with the trier of fact because the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections — observations that are critical to determining a witness's credibility. *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010-Ohio-4354, ¶ 17, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996), and *State v. Antill*, 176 Ohio St. 61, 66, 197 N.E.2d 548 (1964). The trier of fact is free to accept or reject any or all the testimony of any witness. *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16. As this court has previously recognized, a defendant is not entitled to a reversal on manifest-weight grounds merely because inconsistent evidence was presented at trial. *State v. Gaughan*, 8th Dist.

Cuyahoga No. 90523, 2009-Ohio-955, ¶ 32, citing *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21.

**{¶38}** As the state correctly points out, the only conflicting evidence relates wholly to immaterial information such as the specific outfit worn by Jackson or the gun he was using. All material facts, including that Jackson was identified as the perpetrator, the crimes he committed, the victims, and the location and sequence of the crimes, that were actually relevant to the conviction remained static. Moreover, Richardson's testimony was not of great significance in Jackson's conviction. In fact, his testimony was successfully discounted by the defense and the jury's questions.

**{¶39}** The jury's verdict demonstrates that it considered all the evidence, weighed the testimony of all the witnesses, and discounted and accepted testimony where the jury determined it was appropriate. Accordingly, based on the record before us, we cannot say that this is the exceptional case where the jury clearly lost its way in finding Jackson guilty.

**{¶40}** The second assignment of error is overruled.

### III.  Flight Jury Instruction

**{¶41}** In his third assignment of error, Jackson contends the trial court erred by giving the jury a flight instruction.

**{¶42}** The giving of jury instructions is within the sound discretion of the trial court, and we review it for an abuse of discretion. *State v. Howard*, 8th Dist. Cuyahoga No. 100094, 2014-Ohio-2176, ¶ 35, citing *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (3d Dist.1993).

**{¶43}** In this case, the trial court gave the following instruction to the jury on flight:

> There may be evidence in this case to indicate the defendant fled from the scene of the crime. Flight does not in and of itself raise a presumption of guilt, but it may show consciousness of guilt or a guilty connection with the crime. If you find the defendant did flee from the scene of the crime, you may consider the circumstance in your consideration with the guilt or innocence of the defendant.

**{¶44}** Similar versions of this flight instruction have been upheld by this court in numerous cases, including *State v. Gibson*, 8th Dist. Cuyahoga No. 98725, 2013-Ohio-4372, *State v. Vanderhorst*, 8th Dist. Cuyahoga No. 97242, 2012-Ohio-2762, ¶ 55, and *State v. Hamilton*, 8th Dist. Cuyahoga No. 86520, 2006-Ohio-1949. However, the instructions given in those cases were upheld because the evidence demonstrated that the instruction was warranted.

{¶45} "'[A] mere departure from the scene of the crime is not to be confused with deliberate flight from the area in which the suspect is normally to be found.'" *State v. Santiago*, 8th Dist. Cuyahoga No. 95516, 2011-Ohio-3058, ¶ 30, quoting *State v. Norwood*, 11th Dist. Lake Nos. 96-L-089 and 96-L-090, 1997 Ohio App. LEXIS 4420 (Sept. 30, 1997).

{¶46} In *Norwood*, the court found that the flight instruction was error, albeit harmless error, because the defendant did not "leave the general area in which he may have normally been found. Additionally, we do not equate appellant's attempt to hide in [a friend's] kitchen with flight." *Id*. at *15. The court further found that "the facts are also insufficient to justify a flight instruction because appellant did not flee to a situs where he could not have been easily located." *Id*. at *15-16. Accordingly, it must be clear that the defendant took affirmative steps to avoid detection and apprehension beyond simply not remaining at the scene of the crime.

{¶47} Recently this court held in *State v. Johnson*, 8th Dist. Cuyahoga No. 99715, 2014-Ohio-2638, ¶ 110, that the defendant's conduct of leaving the scene of the crime did not warrant a flight instruction because there was no evidence of deliberate flight in the sense of evading police. *See also State v. Wesley*, 8th Dist. Cuyahoga No. 80684, 2002-Ohio-4429 (flight instruction not warranted based on insufficient evidence).

**{¶48}** Much like in *Johnson*, the evidence in this case did not warrant a flight instruction. Jackson's leaving the scene was not deliberate flight in the sense of evading police and detection. In fact, Detective Jeff Sampson testified that after Jackson was identified as the suspect, he did not make any effort to locate him. Furthermore, Officer Daniel Rescina testified that when Jackson was arrested two days following the murder, he was arrested without fleeing, resisting, or protesting in any way. There was no evidence presented that Jackson fled to a location where he could not be located or that he evaded police once detected. Accordingly, we find the trial court abused its discretion instructing the jury on flight.

**{¶49}** Despite the court's error, we cannot say, nor has Jackson demonstrated, that the error was prejudicial. "A reviewing court may not reverse a conviction in a criminal case due to jury instructions unless it is clear that the jury instructions constituted prejudicial error." *State v. McKibbon*, 1st Dist. Hamilton No. C-010145, 2002-Ohio-2041, ¶ 4, citing *State v. Adams*, 62 Ohio St.2d 151, 154, 404 N.E.2d 144 (1980). In order to determine whether an erroneous jury instruction was prejudicial, a reviewing court must examine the jury instructions as a whole. *State v. Harry*, 12th Dist. Butler No. CA2008-01-013, 2008-Ohio-6380, ¶ 36, citing *State v. Van Gundy*, 64 Ohio St.3d 230, 233-234, 594 N.E.2d 604 (1992). "A jury instruction constitutes prejudicial error where it results in a manifest miscarriage of justice." *State v. Hancock*, 12th Dist.

Warren No. CA2007-03-042, 2008-Ohio-5419, ¶ 13. Conversely, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A).

**{¶50}** Reviewing the jury instructions as a whole, we cannot say that the trial court's instruction on flight was prejudicial, such that a manifest miscarriage of justice occurred. The instruction given, although improper, allowed the jury to make its own conclusions on flight and to consider whether Jackson left the scene and, if so, his motivation for leaving. Thus, the instruction did not change the underlying facts of the case; the instruction was harmless beyond a reasonable doubt.

**{¶51}** Accordingly, we overrule Jackson's third assignment of error.

## IV. Allied Offenses

**{¶52}** In his fourth assignment of error, Jackson contends that the trial court erred when it failed to merge all allied offenses. Specifically, Jackson contends that aggravated burglary is allied to the convictions for aggravated murder, kidnapping, and attempted aggravated murder because they were committed with the same conduct and animus.

**{¶53}** In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the court held that a defendant's conduct must be considered when determining whether

two offenses are allied offenses of similar import subject to merger under R.C. 2941.25.

*Johnson* at ¶ 44.   Thus,

> a defendant can be convicted and sentenced on more than one offense if the evidence shows that the defendant's conduct satisfies the elements of two or more disparate offenses.   But if the conduct satisfies elements of offenses of similar import, then a defendant can be convicted and sentenced on only one, unless they were committed with separate intent.

*State v. Williams*, 124 Ohio St.3d 381, 2010-Ohio-147, 922 N.E.2d 937, ¶ 36 (Lanzinger, J., concurring in part and dissenting in part).

**{¶54}** In other words,

> [i]f the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind."   If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

*Johnson* at ¶49-50, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting).

**{¶55}** In this case, Jackson was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1), aggravated murder in violation of R.C. 2903.01(B); and seven counts of kidnapping in violation of R.C. 2905.01(A)(3).

**{¶56}**  Jackson contends that the crimes of aggravated burglary and kidnapping were committed simultaneously and arose out of the same conduct such that the kidnapping against the victim occurred only to facilitate the aggravated burglary.

**{¶57}** Jackson also claims that the crimes of aggravated burglary and aggravated murder were committed with the same conduct and animus because the aggravated burglary was not complete until the aggravated murder was committed. Specifically, he argues that the conduct relied upon to establish the physical harm in the aggravated murder was the same as the conduct relied upon by the state to establish the "physical harm" element for aggravated burglary. While this may have been true for the guilt phase of trial; the state is not bound to this theory at sentencing.

**{¶58}** The Supreme Court recently decided *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, that held that "[m]erger is a sentencing question, not an additional burden of proof shouldered by the state at trial." *Id*. at ¶ 18. In reversing the appeals court, the Ohio Supreme Court held,

> when deciding whether to merge multiple offenses at sentencing pursuant to R.C. 2941.25, a court must review the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with a separate animus. The court of appeals erred by looking solely to what it perceived as the state's theory of the case at trial and by refusing to consider the information presented at the sentencing hearing.

*Id*. at ¶ 24.

**{¶59}** The crime of aggravated burglary was complete moments after Jackson invaded the home. As soon as Jackson forced his way through the door, he immediately struck Donna D. in the head with the butt of the gun. These actions constituted

aggravated burglary and were separate from the subsequent crimes of attempted aggravated murder (stabbing Donna D. in the head with a knife or trying to shoot Donna D., Gloria, Bernadette, or Donna), aggravated murder of David, and kidnapping (chasing, terrorizing, and restraining the liberty of the other seven occupants of  house). Jackson's animus was separate and distinct for each crime after he initially forced his way into the house with the purpose to harm Donna D.

**{¶60}** Accordingly, aggravated burglary did not merge with any of the other offenses for sentencing purposes.   Jackson's fourth assignment of error is overruled.

## V.   Sentence

**{¶61}** In his fifth assignment of error, Jackson contends that the trial court abused its discretion when it imposed a sentence of life without parole.   Jackson contends that the trial court did not consider the factors set out in R.C. 2929.12 regarding mitigation of his conduct, specifically, that the trial court did not consider his mental illness as a mitigating factor.

**{¶62}** As the state correctly points out, Jackson fails to recognize that the general felony sentencing statutes are inapplicable to aggravated murder because "aggravated murder is governed by a special statutory scheme, carries a mandatory punishment, is not classified by degree of felony, and is expressly exempted from * * * sentencing

requirements inapplicable to felonies of lesser degrees." *State v. Hollingsworth*, 143 Ohio App.3d 562, 567-568, 758 N.E.2d 713 (8th Dist.2001).

**{¶63}** Jackson was convicted of aggravated murder pursuant to R.C. 2903.01(B), which carries, in this particular case, a life sentence. R.C. 2929.02(A). Pursuant to R.C. 2929.03(A)(1)(a)-(d), the life sentence can either be without or with parole eligibility after serving 20 to 30 years. In this case, Jackson was sentenced to life in prison, without parole. Jackson concedes that his sentence falls within the statutory range for aggravated murder.

**{¶64}** R.C. 2953.08 governs review of felony sentencing. R.C. 2953.08(D)(3) provides, "[a] sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section." The Ohio Supreme Court has held that this is unambiguous: a sentence for aggravated murder imposed pursuant to R.C. 2929.02 to 2929.06 cannot be reviewed. *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, citing *Hollingsworth*. Accordingly, evidentiary review of a sentence imposed by a trial court pursuant to R.C. 2929.03(A)(1)(a) is precluded.

**{¶65}** Even addressing Jackson's argument that the trial court did not consider his mental illness in imposing a life sentence on aggravated murder, we find that the trial court addressed, considered, and factored in at length, Jackson's mental illness when the

trial court discussed Jackson's psychological report prepared by Dr. Fabian. Accordingly, the record supports the sentence and is not contrary to law. Jackson's fifth assignment of error is overruled.

## VI. Imposition of Costs

{¶66} In his sixth assignment of error, Jackson contends that the trial court abused its discretion when it imposed court costs.

{¶67} R.C. 2947.23(A)(1) governs the imposition of court costs and provides in pertinent part: "In all criminal cases * * * the judge * * * shall include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs."

{¶68} "R.C. 2947.23 does not prohibit a court from assessing costs against an indigent defendant; rather it requires a court to assess costs against all convicted defendants." *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8. In that case, the Ohio Supreme Court held that "a trial court may assess court costs against an indigent defendant convicted of a felony as part of the sentence." *Id.* at paragraph one of the syllabus. Therefore, a "defendant's financial status is irrelevant to the imposition of court costs." *State v. Clevenger*, 114 Ohio St.3d 258, 2007-Ohio-4006, 871 N.E.2d 589, ¶ 3.

**{¶69}** However, court costs may be waived at the discretion of the court if the court first determines that the defendant is indigent. *White* at ¶ 14. The "indigent defendant must move a trial court to waive payment of costs at the time of sentencing. If the defendant makes such a motion, then the issue is preserved for appeal and will be reviewed under an abuse-of-discretion standard. Otherwise, the issue is waived and costs are res judicata." *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 23.

**{¶70}** In this case, Jackson moved the trial court for waiver of court costs and filed the appropriate affidavit of indigency. While the trial court found Jackson indigent for purposes of appeal, the court ordered that Jackson pay for the court costs associated with the case by specifically ordering, "I'm going to impose the court cost on Mr. Jackson. * * * He's got to pay for crimes like these." (Tr. 1364-1367.)

**{¶71}** While Jackson was declared indigent for appeal purposes and is serving a life sentence, the trial court's decision ordering him to pay costs was not an abuse of discretion. Unlike in *State v. Phillips*, 2d Dist. Montgomery No. 23252, 2009-Ohio-5305, *3, where the Second District held that an "indiscernible record" may have led the trial court to conclude it did not have the authority to waive costs, the trial court here was fully apprised of Jackson's request to waive costs, that he had been in jail pending trial, and that he was receiving a life sentence. The court felt the assessment of

costs was appropriate in this case, and nothing in the record shows this decision was arbitrary, unconscionable, or unreasonable. Costs for criminal cases that are assessed at sentencing "are not punishment, but more akin to a civil judgment for money." *Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, at ¶ 15. "The state may use any collection method that is available * * * to collect from a prisoner's account." *Id* at ¶ 24. Accordingly, we do not find that the trial court abused its discretion in imposing court costs against Jackson, and his sixth assignment of error is overruled.

**{¶72}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR