[Cite as *State v. Reed*, 2016-Ohio-291.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102729**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHARLES REED

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-589117-B

**BEFORE:** Keough, P.J., E.T. Gallagher, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** January 28, 2016

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Andrew T. Gatti
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

{¶1} Defendant-appellant, Charles Reed, appeals from the trial court's judgment, rendered after a jury trial, finding him guilty of felonious assault and having a weapon while under disability, and sentencing him to eight years in prison. We affirm.

## I. Background

{¶2} In September 2014, Reed and his codefendant, Chuck Ford, were each charged with two counts of felonious assault and having a weapon while under a disability. The felonious assault charges carried one- and three-year firearm specifications, as well as notice of prior conviction and repeat violent offender specifications.

{¶3} Reed pleaded not guilty at arraignment and the court assigned counsel. In October, after several pretrials, Reed filed a notice of termination of assigned counsel. The trial court granted the motion and assigned new counsel.

{¶4} Trial commenced on February 3, 2015. Immediately prior to trial, Reed moved the court to assign new counsel. The trial court denied the motion.

{¶5} Reed waived a jury trial regarding the notice of prior conviction and repeat violent offender specifications with respect to Counts 1 and 2, and the charge of having a weapon while under disability.

{¶6} At trial, Antoine Harrison testified that he was a longtime friend of Rayshawn Scott, who lived in a house near West 51st Street and Clark Avenue in May 2014. On the evening of May 30, 2014, Harrison and Scott went to the Cinema bar,

where they met up with Reed. Harrison, Scott, and Reed then went to the Bosworth Tavern, where Ford was the security guard. From there, Harrison, Scott, and Reed went to O'Malley's, another bar, where they stayed until 2:30 a.m.

{¶7} Harrison testified that after they left O'Malley's, Scott drove to a gas station, where everyone got out for a short time. Harrison observed that Reed talked to several women at the gas station, and then called someone on his phone. Harrison said that when he went back to the car, Reed told him that Harrison had "problems with [Reed's] people." When Harrison told Reed to tell "his people" not to talk about him, Reed said, "then you're going to get it in." Harrison said "get it in" means to fight, so he assumed that Reed wanted him to fight someone.

{¶8} Scott, Harrison, and Reed got back in the car. Harrison said that Scott drove, he sat in the front passenger seat, and Reed sat behind him. According to Harrison, when he told Scott to drop him off at a friend's house, Reed put a gun to the back of the seat and told Harrison that he would shoot him if he got out of the car.

{¶9} Reed then told Scott to drive to Scott's house. When they arrived, Harrison saw Ford standing outside the house by his car. According to Harrison, Scott pulled his car to the back of the driveway and everyone got out of the car. Reed told Harrison to go by Ford, and then started waving the gun at him. When Harrison asked him to put the gun away, Reed shot him in the leg. Harrison stumbled back toward the house. Reed then gave the gun to Ford, who shot Harrison in the other leg. As Harrison was sitting against the house, Ford looked at Reed and Scott and asked, "Who going to finish him

off?" Harrison testified that he pleaded for his life, and Ford finally told him to "get the f— out of here."

{¶10} Harrison testified that he ran away from the house and then collapsed on the street corner. Harrison stated that as he was waiting for his friend Katie Webb to come pick him up, he saw Scott drive by, look at him, and then drive away.

{¶11} Webb testified that she picked Harrison up at the corner of West 51st Street and Clark Avenue after he called her in the early morning hours of May 31, 2014. On cross-examination, she testified that as she drove Harrison to the hospital, he told her that he had been shot while he was in a car with Scott and Reed, and then dumped out of the car.

{¶12} Dr. Michael Smith, an emergency room doctor at Metrohealth Hospital, testified that Harrison told emergency room personnel that he was walking, heard four gunshots, and fell to his knees. Due to the nature of Harrison's injuries, the police were notified of Harrison's hospital admission.

{¶13} Scott testified that he lived in a house at West 51st Street and Clark Avenue in May 2014 with Ashanee Thomas and her children, and Ashanee's friend Alicia Shaver. Scott said that Ashanee was dating Reed, and that Reed would sometimes stay at his house with her.

{¶14} Scott's testimony about the events of May 31, 2014 differed from Harrison's. Scott said that he and Harrison picked up Reed and then went to a few bars, ending at O'Malley's. Scott said that upon leaving O'Malley's, they drove directly to his

house, where Ford was waiting by his car. He said that Ford and Reed walked away and exchanged words, and then, as he was walking toward his house, he heard a gunshot. Scott turned around and saw Ford pass the gun to Reed, who then shot Harrison. Scott said Reed then told Harrison to "get out of here before I kill you."

{¶15} Scott denied that Reed pulled a gun on Harrison during the ride from O'Malley's to his house and insisted that the first time he saw a gun was in Ford's hand at his house. He also testified that Harrison was in the backseat of the car, and Reed sat in the front passenger seat.

{¶16} Thomas testified that she is Reed's girlfriend. She identified state's exhibit No. 24 as a recorded jail cell telephone conversation between her and Reed in which she reminded Reed that she had earlier told him that Harrison had been "rubbing up on her" during a car ride in April 2014. She identified state's exhibit No. 25 as a recorded jail cell telephone conversation between her mother and Reed in which Reed said that Ford was his best friend.

{¶17} Cleveland police detective David Santiago was assigned to investigate the case in June 2014. Det. Santiago testified that he took recorded statements from Harrison and Scott, and presented them with photo lineups in which they identified Reed and Ford. Det. Santiago acknowledged that the police did not recover any physical evidence from the scene, and that no gun or DNA were ever recovered. He further acknowledged that Harrison was hostile and would not answer any questions when the police tried to question him as he was being treated at the hospital on May 31, 2014.

{¶18} The trial court denied Reed's Crim.R. 29 motion for acquittal, and the jury found him guilty of both counts of felonious assault. The trial court subsequently found Reed guilty of the notice of prior conviction and repeat violent offender specifications as charged in Counts 1 and 2, and of having a weapon while under a disability. The felonious assault convictions merged for sentencing, and the state elected to proceed on Count 2. The trial court sentenced Reed to a total of eight years incarceration: five years incarceration on the felonious assault conviction, consecutive to a three-year term on the firearm specification, and concurrent to a two-year term on the conviction for having a weapon while under disability. This timely appeal followed.

## II. Analysis

A. Sixth Amendment Right to Counsel

{¶19} In his first assignment of error, Reed contends that the trial court violated his Sixth Amendment right to counsel when it denied his request for new counsel on the day of trial.

{¶20} Where a defendant questions the effectiveness and adequacy of assigned counsel, the trial court has a duty to inquire into the defendant's complaint and make such inquiry a part of the record. *State v. Deal*, 17 Ohio St.2d 17, 244 N.E.2d 742 (1969), syllabus. Nevertheless, an indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate good cause to warrant substitution of counsel. *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298 (1999). The trial court may deny the request to substitute counsel if the request is unreasonable. *Id.*, citing

*Deal*, *supra*.   We review the trial court's decision for abuse of discretion.   *Cowans* at 73.

**{¶21}** Reed contends that the trial court abused its discretion in denying his request for new counsel because he distrusted his appointed counsel and felt that he was not helping him because counsel had not timely obtained a recorded statement for trial and had not interviewed all the witnesses that Reed had suggested he interview. Additionally, Reed contends there was a "complete breakdown" in attorney-client communication such that there was good cause for the appointment of new counsel.   We disagree.

**{¶22}** At the hearing on Reed's request for new counsel, assigned counsel stated that he had only recently obtained the recorded statement from the prosecutor due to a mixup between him and the prosecutor, but then he had immediately reviewed it with Reed.   He stated further that he had contacted or attempted to contact all of the witnesses that Reed had suggested he interview.

**{¶23}** We do not find this to be a "complete breakdown" in communication that jeopardized Reed's right to the effective assistance of counsel.   Rather, assigned counsel's representations to the trial court demonstrated that he was, in fact, engaged in discussions with Reed.   Additionally, the trial judge stated that her observations of defense counsel's efforts in the months prior to trial demonstrated that he was diligently working on Reed's behalf.   Having failed to demonstrate good cause to warrant a

substitution of counsel, the trial court did not abuse its discretion in denying Reed's request for new counsel. The first assignment of error is overruled.

B. Jail Cell Telephone Calls

{¶24} In his second assignment of error, Reed contends that the trial court violated his right to a fair trial and his due process rights when it denied his motion to exclude two recorded jail calls that were untimely disclosed by the state. The first recorded call was between Reed and Thomas and was disclosed to the defense on the day before trial. In this call, Thomas, who was Reed's girlfriend, reminded Reed that she had earlier told him that Harrison had been "rubbing up on her" during a car ride, presumably giving Reed a motive for shooting Harrison. The second jail call was disclosed to the defense during trial. In this call, Reed told Thomas's mother that Ford was his best friend.

{¶25} A trial court has broad discretion concerning the admission of evidence; in the absence of an abuse of discretion that materially prejudices a defendant, a reviewing court generally will not reverse an evidentiary ruling. *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 110. A court abuses its discretion when its judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶26} We find no merit to Reed's assertion that the trial court violated his constitutional rights by allowing the admission of these two jail calls. The record reflects that the prosecutor and defense counsel discussed the issue of jail calls prior to trial. The prosecutor offered defense counsel an opportunity to listen to all 48 hours of

recorded jail calls involving Reed, but defense counsel did not request an opportunity to listen to all of the calls. The prosecutor likewise did not listen to all 48 hours of calls, but provided defense counsel with the calls he had reviewed.

{¶27} The record reflects that the prosecutor disclosed the calls to defense counsel immediately upon learning of them. It further reflects that the state's late discovery of the two jail calls occurred because Reed was using another inmate's PIN number to make telephone calls while he was in jail in an attempt to avoid detection of his phone calls. Thus, the state's late discovery and disclosure of the jail calls is directly attributable to Reed's own deceptiveness. Accordingly, the trial court did not abuse its discretion nor violate Reed's constitutional rights by admitting the jail calls.

{¶28} The second assignment of error is overruled.

C. Sufficiency of the Evidence

{¶29} In his third assignment of error, Reed contends that the trial court erred in denying his Crim.R. 29(A) motion for acquittal because there was insufficient evidence to support his convictions.

{¶30} A Crim.R. 29 motion challenges the sufficiency of the evidence. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's

guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶31} Reed was convicted of felonious assault in violation of R.C. 2903.11(A)(1) and (2). Accordingly, the state was required to demonstrate that Reed knowingly caused serious physical harm to another, and caused or attempted to cause physical harm to another by means of a deadly weapon or dangerous ordnance. The felonious assault charges carried one- and three year firearm specifications in violation of R.C. 2941.141(A), thus requiring the state to prove that Reed had a firearm on his person or under his control while committing the offense, or that he had a firearm on his person or under his control while committing the offense, and that he displayed, brandished, or used the firearm to facilitate the offense.

{¶32} Reed was also convicted of having a weapon while under disability, in violation of R.C. 2923.13(A)(2), which required the state to prove that Reed had, carried, or used a firearm despite a prior conviction for a felony offense of violence.

{¶33} The state's theory at trial was that Reed committed a felonious assault either as a principal or by aiding and abetting Ford. Reed contends that his convictions were not supported by sufficient evidence under either theory because the evidence was contradictory. Reed points out that Harrison testified that Reed shot first and then Ford shot, while Scott testified that Ford shot first. In addition, Harrison said that he was

sitting in the front seat of the car and Reed was sitting behind him as they drove to Scott's house, while Scott said that Harrison sat in the back and Reed was in the front. And although Harrison testified that Reed and Ford shot him at Scott's house, Dr. Smith testified that Harrison told emergency room personnel that he was walking, heard four shots, and fell to his knees. Reed also contends that the evidence was insufficient because no gun or DNA evidence was ever recovered, and there was no physical evidence recovered from the scene.

{¶34} Reed's arguments are without merit. Harrison's testimony, by itself, is sufficient, if believed, to establish that Reed shot Harrison and thereby committed a felonious assault with a gun. The evidence is also sufficient to support Reed's conviction for having a weapon while under a disability because Reed stipulated that in 2008, he pleaded guilty to aggravated robbery with a one-year firearm specification, a prior felony offense of violence. The third assignment of error is therefore overruled.

D.    Aiding and Abetting Jury Instruction

{¶35} In his fourth assignment of error, Reed contends that the trial court erred by giving an aiding and abetting instruction to the jury because he was only charged as a principal offender in the bill of particulars.

{¶36} The Ohio Supreme Court rejected this argument in *State v. Herring*, 94 Ohio St.3d 246, 251, 762 N.E.2d 940 (2001), where it stated:

> R.C. 2923.03(F) states: "A charge of complicity may be stated in terms of this section, or in terms of the principal offense." Thus, a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is "stated * * *

in terms of the principal offense" and does not mention complicity. R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense. *See State v. Keenan* (1998), 81 Ohio St.3d 133, 151, 689 N.E.2d 929, 946, citing *Hill v. Perini* (C.A.6, 1986), 788 F.2d 406, 407-408.

**{¶37}** Moreover, Crim.R. 33(E)(2) provides that a variance between the allegations and the evidence at trial is not reversible error unless the defense is prejudiced or misled thereby. Here, the state's failure to allege complicity in the bill of particulars did not prejudice or mislead Reed because the state disclosed at the beginning of trial that it was proceeding against Reed as both the principal and an accomplice. The fourth assignment of error is therefore overruled.

E.     Manifest Weight of the Evidence

**{¶38}** Reed next contends that his convictions were against the manifest weight of the evidence. A manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598 at ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶39}** Reed contends that his convictions were against the manifest weight of the evidence because there were inconsistencies in the witnesses' testimony regarding who shot first, where people were located during the shooting, and where they were sitting in the car on the way to Scott's house before the shooting. Additionally, he notes that Harrison testified that the group stopped at a gas station after leaving O'Malley's, while Scott testified that they drove directly to his house. And, although Harrison testified that Reed and Ford shot him at Scott's house, he told emergency room personnel that he was walking, heard four shots, and fell to the ground.

**{¶40}** Reed also argues that the credibility of the witnesses was questionable. He notes that Harrison refused to talk to the police when they tried to question him at the hospital immediately after the shooting. He further notes that Scott testified that he continued to associate with both Reed and Ford following the shooting, even though he was afraid of them, and that Scott's testimony could have been motivated by a desire to get Reed out of the picture because he was living with Thomas, who was Reed's girlfriend. Finally, Reed contends that the evidence establishes that Ford acted alone because he pleaded guilty to felonious assault and did not implicate Reed.

**{¶41}** Although we consider the credibility of witnesses in a manifest weight challenge, we are mindful that the determination regarding witness credibility rests primarily with the trier of fact, who is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections — observations that are critical to determining a witness's credibility. *State v. Jackson*, 8th Dist. Cuyahoga No. 100125,

2014-Ohio-3583, ¶ 37. The jury may take note of any inconsistencies and resolve them accordingly, choosing to believe all, part, or none of a witness's testimony. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21. Thus, as this court has previously recognized, a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. *Jackson* at ¶ 37.

{¶42} With these principles in mind, we find that this is not the exceptional case where the evidence weighs heavily against the conviction. Where Harrison and Reed were sitting in the car is not material to whether Reed shot Harrison at Scott's house. Moreover, although Harrison and Scott testified inconsistently as to who shot Harrison first, they both agreed that Reed shot Harrison. Reed's assertion that Scott's testimony was motivated by an intent to get rid of him so he could be with Reed's girlfriend is mere speculation. And the fact that Ford, Reed's best friend, pleaded guilty without implicating Reed is not dispositive of whether Reed was involved in the shooting.

{¶43} The jury heard the testimony of the witnesses and was free to resolve the inconsistencies in the testimony. On this record, we cannot conclude that the jury lost its way in finding Reed guilty of felonious assault with the attendant firearm specifications. Likewise, because Reed stipulated to a prior felony offense of violence, the trial court did not lose its way in finding Reed guilty of having a weapon while under a disability, and the notice of prior conviction and repeat violent offender specifications associated with the felonious assault charges. The fifth assignment of error is therefore overruled.

{¶44} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR