[Cite as *State v. Henson*, 2020-Ohio-262.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | Case No. 2019 CA 00017 |
| ANTHONY HENSON | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:    Appeal from the Fairfield County Court of
                             Common Pleas, Case No. 2018-CR-
                             00368

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      January 28, 2020

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

R. KYLE WITT                          BRADLEY S. NICODEMUS
Fairfield County Prosecuting Attorney The Nicodemus Law Office, LPA
                                      1409  West Market Street
DARCY T. COOK                         Baltimore, Ohio  43105
Assistant Prosecuting Attorney
239 West Main Street
Suite 101
Lancaster, Ohio  43130

*Hoffman, J.*

**{¶1}** Appellant Anthony Henson appeals the judgment entered by the Fairfield County Common Pleas Court convicting him of domestic violence with a pregnancy specification (R.C. 2919.25(A),(D)(5)), and sentencing him to six months incarceration. Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On June 6, 2018, H.H., the victim in the instant case, was married to Appellant. The couple lived with H.H.'s parents. On that same day, H.H.'s mother left the residence for the dog groomer between 8:00 and 8:30 a.m. H.H. texted her mother to come home around 9:00 a.m. When the victim's mother returned home, H.H. was in the bathroom vomiting. H.H. was shaken and crying, and told her mother Appellant shoved her, knocked her into a table in the living room, and followed her to the bathroom, where he grabbed her by the throat and hit her head against the wall. The victim's mother observed the table in the entry way of the home had a leg which was bent, candle wax from a candle warmer had splashed on the wall, and there was vomit on the arm of the couch. H.H. had bruises on her arm and neck which were not there the previous night. The victim's mother called the victim's father, who called the police.

**{¶3}** Officer Curtis Guisinger of the Lancaster Police Department responded to the call. His body camera recorded his encounter with H.H. In the video, H.H. told Officer Guisinger Appellant grabbed her by the throat, and turned her over a box and through the living room stand, which flipped the stand over, causing wax to spill. When she tried to get up, Appellant turned her on her stomach and bashed her head into the carpet. H.H. told the officer Appellant grabbed her by the throat, and started choking her until she started vomiting. He bashed her head against the bathroom wall while she was vomiting.

The officer observed bruises on H.H.'s arm and neck, as well as redness on her neck. He further felt a bump on her head, and noted she was coughing in a manner consistent with being choked.

**{¶4}** Appellant was charged with domestic violence, with a specification the victim was pregnant at the time. Prior to trial, the state filed a motion in limine seeking to introduce other acts evidence of two past incidents of violence between Appellant and the victim pursuant to Evid. R. 404(B). The trial court ruled evidence of one incident inadmissible, but would allow the State to present evidence of an incident which occurred on October 17, 2017.

**{¶5}** The case proceeded to jury trial in the Fairfield County Common Pleas Court. The victim was called as the court's witness. She testified on June 6, 2018, she asked Appellant to get their child's car seat base out of the car, but when he tried to leave, she held on to his arm and wouldn't let him leave. He threatened to pack all his stuff and leave to avoid arguing with her. She testified he grabbed her arm, and she jerked away, catching her foot on the edge of a box and falling. She testified the table tipped during her fall. Appellant left the home after she fell. She admitted in her application for a protective order, she stated Appellant choked her, grabbed her by the arm, bashed her head against the wall and kicked her. She also admitted the bruises on her arm were caused by Appellant grabbing her, but testified she did now know where the bruise on her neck came from in the photographs taken on the day in question, or why her lip was bleeding. She testified she did not think Appellant was trying to hurt her when he grabbed her.

**{¶6}** As to the incident on October 7, 2017, H.H. testified she hit Appellant, the police came, and Appellant fled out the window.

**{¶7}** The victim's sister testified on October 7, 2017, she was in the basement watching television when she heard Appellant and H.H. screaming. She also heard banging. She heard H.H. say, "Stop, you are hurting me." Tr. 212. When the sister went upstairs, she found the bedroom door where H.H. and Appellant were arguing was locked. H.H. opened the door, and her sister saw Appellant exiting the home through a window. H.H. was crying, upset, and backed up against the wall.

**{¶8}** The jury found Appellant guilty of domestic violence with a pregnancy specification. He was convicted as charged and sentenced to six months incarceration. It is from the April 10, 2019 judgment of conviction and sentence Appellant prosecutes his appeal, assigning as error:

I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT PERMITTED TESTIMONY OF APPELLANT'S PRIOR ACTS, PURSUANT TO EVIDENCE RULE 404.

II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT PERMITTED TESTIMONY OF APPELLANT'S PRIOR ACTS AS EVIDENCE OF HABIT, PURSUANT TO EVIDENCE RULE 406.

III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY INCLUDING JURY INSTRUCTION REGARDING FLIGHT.

IV. THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THEREFORE CONTRARY TO LAW.

I.

**{¶9}** In his first assignment of error, Appellant argues the court erred in admitting evidence of his prior bad acts pursuant to Evid. R. 404, specifically the testimony of H.H. and her sister regarding the incident occurring October 7, 2017.

**{¶10}** Evid. R. 404(B) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

**{¶11}** R.C. 2945.59 similarly provides:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent

thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶12}** "Because R.C. 2945.59 and Evid. R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." *State v. Broom*, 40 Ohio St.3d 277, 281–82, 533 N.E.2d 682, 689–90 (1988). Evidence to prove the "type" of person the defendant is in order to show he acted in conformity therewith in the instant case is barred by Evid. R. 404(B). *State v. Greene*, 5th Dist. Tuscarawas No. 2012 AP 02 0018, 2012–Ohio–5624, 983 N.E.2d 773, ¶ 35.

**{¶13}** The Ohio Supreme Court has set forth a three-part test for determining the admissibility of other acts evidence:

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid. R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid. R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid. R 403.

**{¶14}** *State v. Williams*, 134 Ohio St.3d 521, 2012–Ohio–5695, 983 N.E.2d 1278, ¶ 20.

**{¶15}** "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exerci in line with the rules of procedure and evidence." *Rigby v. Lake Cty.,* 58 Ohio St. 3d 269, 271, 559 N.E.2d 1056 (1991).

**{¶16}** In the instant case, we find the other acts evidence was relevant to making any fact of consequence to the determination of the action more or less probable than it would be without the evidence. Specifically, we find H.H.'s sister's testimony she heard H.H. tell Appellant to stop hurting her during the prior incident made it more probable Appellant intended to hurt H.H. on June 6, 2018.

**{¶17}** Turning to whether the evidence was presented to prove the character of the accused in order to show activity in conformity therewith or whether the evidence was presented for a legitimate purpose, the trial court found the evidence admissible to prove Appellant's intent, his motive, or absence of accident, and gave the jury a limiting instruction in accordance with this ruling.

**{¶18}** We find the evidence of the prior incident did demonstrate intent and absence of accident. Concerning the incident on June 6, 2018, the victim testified on cross-examination by the State[1] she asked Appellant to get their child's car seat base out of the car, but when he tried to leave, she held on to his arm and wouldn't let him leave. She testified he grabbed her arm, and she jerked away, catching her foot on the edge of a box and falling. Following cross-examination by the State, during defense counsel's

---

[1] The victim was called as the court's witness; therefore, both parties were permitted to cross-examine the witness pursuant to Evid. R. 614.

cross-examination of the victim, counsel asked, "When you grabbed Anthony's arm and he grabbed yours back, do you think he was trying to hurt you?"  Tr. 119.  Appellant thereby raised the issue of whether or not he intended to hurt her by grabbing her, or whether she was injured by accident, and evidence of a prior incident in which the victim was heard saying Appellant was hurting her became relevant to establish his intention to harm her and the absence of accident.

**{¶19}**  Subsequent to this portion of the victim's questioning, the court ruled the State could present evidence of the past incident.  We find the court did not abuse its discretion in finding evidence of the October, 2017, incident admissible pursuant to Evid. R. 404(B).

**{¶20}**  Turning to the third prong of the *Williams* test, whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice, the victim testified she was the one who hit Appellant in the prior incident.  We find the victim's testimony about the prior incident was not prejudicial to Appellant.  The victim's sister testified she heard yelling and banging, and heard the victim tell Appellant to stop hurting her.  We find the victim's sister's testimony concerning the past incident was probative on the issue of whether Appellant intended to hurt the victim or whether the incident on June 6, 2018, was an accident.  We also find her testimony was not particularly prejudicial, as she witnessed no act of physical violence between the parties.  We find the prejudicial effect of evidence of the October, 2017, incident did not outweigh its probative value.

**{¶21}**  The first assignment of error is overruled.

II.

**{¶22}** In his second assignment of error, Appellant argues the court erred in admitting evidence of the prior act as habit evidence pursuant to Evid. R. 406. The trial court found the evidence admissible pursuant to Evid. R. 406 as an alternative basis to admission from Evid. R. 404(B). Because we have found the evidence admissible pursuant to Evid. R. 404(B), we find this assignment of error concerning habit evidence to be moot.

**{¶23}** The second assignment of error is overruled.

III.

**{¶24}** In his third assignment of error, Appellant argues the court erred in instructing the jury on flight. The court gave the following instruction to the jury regarding evidence Appellant fled the scene:

Concerning flight. Testimony has been admitted indicating that the Defendant may have fled the scene. You are instructed that fleeing the scene alone does not raise a presumption of guilt, but it may tend to indicate the Defendant's consciousness of guilt. If you find the facts do not support that the Defendant fled the scene, or if you find that some other motive prompted the Defendant's conduct, or if you are unable to decide what the Defendant's motivation was, then you should not consider the evidence for any purpose. However, if you find the facts support the Defendant engaged in such conduct, and if you decide that Defendant was motivated by a consciousness of guilt, you may, but you are not required to consider that

evidence in deciding whether the Defendant is guilty of the crimes charged.

You alone will determine what weight, if any, to give to this evidence.

**{¶25}** Tr. 314.

**{¶26}** A mere departure from the scene of the crime is not to be confused with deliberate flight from the area in which the suspect is normally to be found. *State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2014-Ohio-3583, ¶45. Accordingly, it must be clear the defendant took affirmative steps to avoid detection and apprehension beyond simply not remaining at the scene of the crime. *Id.* at ¶46.

**{¶27}** The evidence in the instant case did not warrant a flight instruction. There is no evidence Appellant took affirmative steps to avoid detection and apprehension beyond simply leaving the scene of the crime.

**{¶28}** However, a reviewing court may not reverse a conviction in a criminal case due to jury instructions unless it is clear the jury instructions constituted prejudicial error. *State v. McKibbon,* 1st Dist. Hamilton No. C–010145, 2002–Ohio–2041, ¶ 4, citing *State v. Adams,* 62 Ohio St.2d 151, 154, 404 N.E.2d 144 (1980). In order to determine whether an erroneous jury instruction was prejudicial, a reviewing court must examine the jury instructions as a whole. *State v. Van Gundy*, 64 Ohio St.3d 230, 233–234, 594 N.E.2d 604 (1992). Pursuant to Crim. R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

**{¶29}** We find the flight instruction in the instant case did not constitute prejudicial error. The court did not instruct the jury flight was a fact, but rather allowed the jury to determine for itself whether Appellant did in fact flee, and if so, whether flight was

motivated by consciousness of guilt. The jury was instructed to disregard evidence of flight if it found flight did not occur or was not motivated by consciousness of guilt. Further, the jury was instructed even if it found Appellant fled and his flight was motivated by guilt, they were to determine what weight, if any, to give to the evidence. In light of the other evidence of guilt as discussed in assignment of error one above, we find the jury instruction did not rise to the level of prejudicial error.

**{¶30}** The third assignment of error is overruled.

IV.

**{¶31}** In his fourth assignment of error, Appellant argues the judgment convicting him of domestic violence is against the manifest weight of the evidence. Specifically, he argues the testimony was conflicting because the victim's testimony at trial does not support a finding of guilt.

**{¶32}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶33}** Appellant was convicted of domestic violence in violation of R.C. 2919.25, which provides in pertinent part:

(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

(D)(5) Except as otherwise provided in division (D)(3) or (4) of this section, if the offender knew that the victim of the violation was pregnant at the time of the violation, a violation of division (A) or (B) of this section is a felony of the fifth degree, and the court shall impose a mandatory prison term on the offender pursuant to division (D)(6) of this section, and a violation of division (C) of this section is a misdemeanor of the third degree.

**{¶34}** Appellant does not challenge the finding pursuant to R.C. 2919.25(D)(5) he knew the victim was pregnant at the time, but solely argues the judgment finding he knowingly caused or attempted to cause harm to H.H. is against the manifest weight of the evidence.

**{¶35}** While we agree with Appellant the victim's testimony at trial may not have supported a conviction, there was ample other evidence presented, based on her statements to her mother and to police at the time of the incident, from which the jury could find the elements of the crime proven beyond a reasonable doubt.

**{¶36}** The State submitted evidence of the photographs of the victim's injuries, as well as the video from the officer's body camera in which H.H. recounted Appellant grabbed her by the throat, turned her over a box and through a stand, which flipped the stand over, causing wax to spill. When she tried to get up, Appellant turned her on her stomach and bashed her head into the carpet. H.H. told the officer Appellant grabbed her by the throat, and started choking her until she started vomiting. He bashed her head

against the bathroom wall while she was vomiting. The officer observed bruises on H.H.'s arm and neck, as well as redness on her neck. He further felt a bump on her head, and noted she was coughing in a manner consistent with being choked.

{¶37} In addition, H.H.s mother testified H.H. texted her to come home around 9:00 a.m. on June 6, 2018. When the victim's mother returned home, H.H. was in the bathroom vomiting. H.H. was shaken and crying, and told her mother Appellant shoved her, knocked her into a table in the living room, and then followed her to the bathroom, where he grabbed her by the throat and hit her head against the wall. The victim's mother observed the table in the entry way of the home had a leg which was bent, candle wax from a candle warmer had splashed on the wall, and there was vomit on the arm of the couch. H.H. had bruises on her arm and neck which were not there the previous night.

{¶38} We find the jury did not lose its way in believing H.H.'s statements made at the time of the incident, which were recorded by the officer's body camera, over her trial testimony. The fourth assignment of error is overruled.

{¶39} The judgment of the Fairfield County Common Pleas Court is affirmed.


By: Hoffman, J.
Gwin, P.J. and
Delaney, J. concur